_Akiva Avikaida Israel BJ0177_
Name and Prisoner Booking Number

_Mule Creek State Prison_
Place of Confinement

_B10-246L, P.O. Box 409040_
Mailing Address

_Ione, CA 95640, Amador County_
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

**FILED**

**Dec 29, 2021**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| _AKIVA AVIKAIDA ISRAEL, ET AL._ <br> (Full Name of Plaintiff)    Plaintiff, <br><br> v. <br><br> (1) _GAVIN C. NEWSOME_ <br> (Full Name of Defendant) <br> (2) _KATHLEEN ALLISON_ <br><br> (3) _HOWARD MOSELEY_ <br><br> (4) _PATRICK COVELLO_ <br> Defendant(s). <br> ☑ Check if there are additional Defendants and attach page 1-A listing them | CASE NO. 2:22-cv-0005-DB (PC) <br> (To be supplied by the Clerk) <br><br><br> **CIVIL RIGHTS COMPLAINT** <br> **BY A PRISONER** <br><br> ☑ Original Complaint <br> ☐ First Amended Complaint <br> ☐ Second Amended Complaint |

### A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:

   ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983

   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

   ☐ Other: _____

2. Institution/city where violation occurred: _MULE CREEK STATE PRISON / Ione._

5. BRYAN HOLMES
6. DAMON HUBER
7. BRETT STACY
8. JEAN WEISS
9. ERIC HOBBS
10. KEITH RODGERS
11. LANCE ESHELMAN
12. CANDACE CLEVENGER
13. B. LOUIE
14. WALTERS
15. P. GANN
16. ZIRZOW
17. J. PADILLA
18. JOSHUA BORDEWICK
19. J. KEENAN

1A

## B. DEFENDANTS

1. Name of first Defendant: _GAVIN C. NEWSOM_. The first Defendant is employed as: _Governor of California_ at _The State of California_.
   (Position and Title)                    (Institution)

2. Name of second Defendant: _KATHLEEN ALLISON_. The second Defendant is employed as: _Secretary of C.D.C.R._ at _C.D.C.R._
   (Position and Title)                    (Institution)

3. Name of third Defendant: _Howard MOSELEY_. The third Defendant is employed as: _Associate Director / Chief of OOA_ at _C.D.C.R._
   (Position and Title)                    (Institution)

4. Name of fourth Defendant: _PATRICK COVELLO_. The fourth Defendant is employed as: _Warden_ at _M.C.S.P._
   (Position and Title)                    (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?     ☑ Yes     ☐ No

2. If yes, how many lawsuits have you filed? _6_. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _AKIVA AVIKAIDA ISRAEL_ v. _K. GIBBS, ET AL._
      2. Court and case number: _2:21-cv-02129-AC_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)
         _PENDING_

   b. Second prior lawsuit:
      1. Parties: _AKIVA A. ISRAEL_ v. _RUBY CARTER, ET AL._
      2. Court and case number: _2:21-cv-1267 KJN_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)
         _PENDING_

   c. Third prior lawsuit:
      1. Parties: _AKIVA AVIKAIDA ISRAEL_ v. _S. GILES_
      2. Court and case number: _2:21-cv-1027-DMC-P_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)
         _PENDING_

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

5. BRYAN HOLMES, CHIEF DEPUTY WARDEN, MCSP.

6. DAMON HUBER, ASSOCIATE WARDEN PROGRAM AND HOUSING FACILITIES A, B AND C, MCSP.

7. BRETT STACY, ASSOCIATE WARDEN HEALTH CARE OPERATIONS, MCSP.

8. JEAN WEISS, ASSOCIATE WARDEN BUSSINESS SERVICES, MCSP.

9. ERIC HOBBS, FACILITY "A" CAPTAIN, MCSP.

10. KEITH RODGERS, FACILITY "B" CAPTAIN, MCSP.

11. LANCE ESHELMAN, COMMUNITY RESOURCES MANAGER, MCSP.

12. CANDACE CLEVENGER, CREEKSIDE ADULT SCHOOL PRINCIPAL, MCSP.

13. B. LOUIE, SERGEANT, MCSP.

14. WALTERS, SERGEANT, MCSP.

15. P. BANN, CORRECTIONAL OFFICER, MCSP.

16. ZIRZOW, CORRECTIONAL OFFICER, MCSP.

17. J. PADILLA, CORRECTIONAL OFFICER, MCSP.

18. JOSHUA BORDEWICK, SERGEANT, MCSP.

19. J. KEENAN, C/O, MCSP

C. PREVIOUS LAWSUITS

(d)
1. Akiva Israel v. Shmary. et al.

2. 2:21-cv-00262-EFB

3. Pending

(e) 1. Akiva Israel V. Tillery, et al.

2. 21-SC-3927

3. Pending

(f) 1. Akiva Israel v. Woodall, et al.

2. 20-SC-02806

3. Dismissed Without Prejudice

2A

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: _8th Amendment (U.S. Constitution)_

2. Claim I. Identify the issue involved. Check only one. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☑ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. Supporting Facts. State as briefly as possible the FACTS supporting Claim I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments. _PARAGRAPH 1:_

   _On 4-30-21, I was ordered to report to R&R (the Receiving and Release Department) to retrieve PACKAGE #LY8EZ. At R&R, Package and departmental peace officer J. PADILLA stated to me: "Seems like last year my department allowed you to have this shit." PADILLA referred to PACKAGE #338602.8. J. PADILLA continued: "I also see that you put in paperwork on my department, so I'm gonna keep some of your shit, MISTER ISRAEL." J. PADILLA referred to Grievance #28579, and SMALL CLAIMS Case No. 21SC3883. I replied calmly: "I will 602 this. You're retaliating against me and stealing my property. I'm female, my pronouns are SHE and HER. I'm Miss Israel. Please respect that." J. PADILLA proceeded to coerce me to sign my property card and receipt, stating: "Sign it, MISTER ISRAEL, or I'll donate the rest of your package." Under duress, I complied. He then stated: "Listen, dude, I'm in the right about this. Take what you got and leave. OR I'll donate your ass." I immediately filed Grievance #113888, wherein I stated: "J. PADILLA inflicted over $80.00 in_

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).
   _Bodily injury and resulting pain and suffering, including disability to eyes as well as mental anguish experienced in the past, at present and to be experienced in the future._

5. Administrative Remedies:
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim I? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _N/A_

3

1 damages, and...threatened me with violence...namely rape."
2 I reported the foregoing to fellow LGBTQ+ inmates,
3 each of whom told me to expect retaliation. R&R
4 officers are known in the community for malicious
5 retaliatory practices in response to grievances
6 alleging (sexual abuse by their officers. On Friday,
7 May. 07, 2021, I expressed safety concerns to C/O
8 C         . In response, I was cuffed and caged in
9 the Program Office on Alpha Yard. Sergeant B. LOUIE
10 proceeded to interrogate me regarding my safety
11 concerns. I requested my hearing aids, but LOUIE
12 denied this request, stating: "Israel, I don't give
13 a fuck about your disability. Answer my questions."
14 I could NOT establish effective communication with
15 LOUIE owing to his refusal to retrieve said medical
16 devices. My breathing became increasingly labored
17 as I suffer from asthma, and required my
18 medically assigned inhalers. Owing to asthmatic
19 complications, I urgently requested said inhalers
20 but, in response, LOUIE laughed, stating: "Israel,
21 Don't be a pussy. Answer my questions." I never
22 received my hearing aids or the inhalers. LOUIE
23 did state to me, "You fuck with PADILLA, you
24 fuck with me." Again, I communicated my
25 safety concerns but officer P. GANNS also
26 in attendance, laughed loudly, louder than LOUIE
27 and taunted me, stating:    "You like getting
28 raped, Israel so What's the problem."

3A

P3:

1  To clarify, I expressed NO safety concerns at this time re-
2  garding the population on Alpha Yard, only those on Bravo and
3  Charlie Yards. After sustained threats, intimidation, and/or
4  coercion by said staff against my person, I began to re-
5  frain from requesting reasonable accommodations, even
6  though I did (& and continue to) suffer from medically
7  documented physical as well as mental disabilities, all while
8  I did NOT pose ANY imminent threat to the safety of staff
9  or inmates; hence, I NEVER received a 115 RVR by
10  said staff concerning the foregoing events. Further-
11  more, the aforesaid denial of reasonable accommodations
12  was NOT necessary for the performance of any legitimate
13  penological duty. P4: Ultimately, for retaliatory motives,
14  B. LOUIE ordered me consigned to Administrative
15  segregation (ASU) for officially non-disciplinary
16  reasons on that Friday, May 07, 2021. Prior to the
17  above-mentioned order, due to the trauma-triggering
18  behaviors of said staff, I did suffer a trauma
19  dissociation reaction (TDR), so described by
20  Senior Social Worker GEORGE MITCHELL on 8-23-21
21  at approx. 04:15 PM PDT and so recorded per the
22  electronically archived MHPC Consult Progress Note,
23  in which I fell to the floor and "blacked out"
24  while handcuffed. During said (TDR), I did NOT
25  experience full loss of, and/or disruption to,
26  standard-operating conscious awareness of
27  either self or my surroundings. I was still in
28  the Program Office on Alpha Yard, and I did

5B

remain aware of being so situated. During the
(T.D.R), a state of deep mental crisis, B. LOUIE
ordered an as-yet-unidentified correctional officer
to kick me in the head, meanwhile said staff
laughed and LOUIE stated: "Wake that bitch up!"
p.5: Upon arrival to the Ad-Seg Unit, Sgt. WALTERS
ordered as yet-to-be identified male officers to forcibly
strip me and slam me onto the concrete ground violently.
During said assault, I was (and still am) a medically
documented transgender FEMALE inmate whose
search protocol states I "shall" be stripped and/or searched
by female custody-staff only. Said protocol is documented
by Captain ARTHUR AVALOS, currently Facility "E"
Captain, certified by CCI ARTEAGA, and is mandated
by SB 132, which Governor NEWSOM signed into law
prior to the above-detailed events. Eventually, Sgt.
WALTERS ordered her subordinate officers to throw
me into a cell "like garbage." Again, I landed violently
on my buttocks and experienced extraordinary
pain, given I had been slammed onto concrete
from a considerable distance, in conjunction
with vigorous force. Then, the door slammed shut,
and I was ordered to place my handcuffed hands
through the food port. I willingly and peacefully, de-
spite profound pain, complied, at which point
WALTERS ordered a yet-to-be-identified male
officer to lift me by the handcuffs. Torrential
laughter ensued, and my feet lost contact with the

3C

1   ground, as I was dangled in the air by the handcuffs for
2   a prolonged period of time. Furthermore, amid the sadistic
3   laughter of WALTERS, I heard her state: "dangle him
4   like a pig on a stick." Immediately, my wrists, hands,
5   forearms, and fingers experienced jolts of agony I
6   have never experienced before and I have yet to
7   experience again. In fear for my life, I yelled
8   desperately for help, and received no help. P6:
9   Before, during and after said assault, I did NOT
10   resist the officers; moreover, I never demonstrated
11   ANY violent or hostile behavior toward the Staff involved
12   in these sadistic acts & anti-LGBTQ+ actions of
13   excessive force, cruel and unusual punishment, and
14   retaliatory torture. I dangled in the air, with the full
15   force of my body acting against my wrists/hands/
16   forearms, and during the aforementioned instance of
17   exceptionally excruciating agony, WALTERS — including
18   the yet-unidentified male officers, proceeded to taunt
19   me with various malicious remarks, each indicative
20   of homophobic, transphobic, anti-semitic and racist
21   consciousness, including (but NOT limited to) the
22   following hate-speech: "tranny bitch," "faggot,"
23   "shim," "Marilyn MAN-roe," etc. WALTERS next
24   ordered: "Apply more force," at which point, I was
25   dropped onto concrete at various times. I was lifted up
26   again, by augmenting force, equally vigorous violence, and
27   slammed onto concrete again and again and again. I yelled
28   at the top of my lungs, begging them to stop & that

3D

1  I feel my limbs fracturing. In response, said staff did not
2  stop and continued to laugh, smile, crack jokes, giggle & berate
3  me with the foulest language, like: "dick-sucking Jew,
4  go figure, with 'BJ' in his damn number!" Pq: Ultimately,
5  after a prolonged passage of time, the handcuffs were re-
6  moved, at which point — given the time of day — I asked
7  said staff when may I expect my evening Kosher meal.
8  WALTERS answered: " Feeding time is tomorrow morning "
9  I never received my evening Kosher meal or ANY
10  food that Sabbath. Furthermore, I proceeded to ask
11  said staff to please give me a shower, clean linens, and
12  cleaning supplies to decontaminate my person & cell
13  from chemical agents to which I had been exposed
14  in the Program Office. WALTERS stated to me:
15  "You won't get shit from us" and walked away.
16  At no point, during the foregoing events, did I resist
17  or engage in any behaviors that threatened order or
18  security. At all times, during said events, there were
19  NO crisis circumstances that necessitated the
20  use of force in a good faith effort to maintain
21  order or ~~system~~ security, but was applied maliciously
22  and/or sadistically for the consistent purpose
23  (or evil motive) of causing me remarkable
24  harm. Based on information and belief, the foregoing
25  physical abuse and retaliation I suffered, and continue to
26  suffer, as a disabled inmate who complains about the
27  facility is systemic, widespread, and culturally tolerated.
28  In my possession, are over 101 sworn declarations from

3E

1  inmates that show MCSP Staff routinely use unnecessary
2  and excessive ~~force~~ force against people with disabilities,
3  particularly those who openly identify as transgender
4  and/or gay, often resulting in broken bones, severe
5  emotional distress, loss of consciousness, stitches or
6  injuries that require medical attention. Widespread
7  physical abuse of LGBTQ+ inmates at MCSP continues;
8  the foregoing account, therefore, is NOT an isolated
9  and/or anomalous incident. LGBTQ+ inmates with
10 certain disabilities (mobility, hearing, speech, vision,
11 kidney, and learning) are being victimized by staff
12 at MCSP with augmenting vigor and CDCR's overall
13 performance in investigating allegations thereof is "poor,"
14 and that this is consistent with the data published by
15 the office of the Inspector General (OIG), which
16 shows that a significant percentage of CDCR's
17 investigations of serious allegations of staff mis-
18 conduct involving inmates are inadequate. Similarly,
19 based on substantial information, MCSP's
20 system for investigating allegations of staff
21 misconduct, particularly cases involving
22 LGBTQ+ people with disabilities, is
23 FLAWED and INEFFECTIVE. Due to
24 injuries to buttocks, Dr. MATHARY ~~prescribed~~ prescribed me
25 incontinence supplies for the rest of my natural
26 life.
27
28

3F

## CLAIM II

1. State the constitutional or other federal civil right that was violated: _8TH Amendment right to Be Free from Deliberate Indifference to Serious Medical Need_

2. Claim II. Identify the issue involved. Check only one. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☑ Other: _Deliberate Indifference to serious Medical Need_
   - ☐ Medical care
   - ☐ Retaliation

3. Supporting Facts. State as briefly as possible the FACTS supporting Claim II. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments. ↑ *Paragraph 9*

   Plaintiffs incorporate by reference the factual allegations in paragraphs 1 - 8, inclusive. On or around 5-7-21, yet-to-be identified correctional officers deployed multiple expulsion grenades at a yet-to-be-named A-yard inmate to whom I was exposed while I was cuffed and caged in the Facility "A" Program Office. I was, consequently, exposed to a chemical agent from head to foot, given my-then proximity and the volume of dispersed chemical agent. I asked Sgt. B. Louie as well as C/O P. Gann for a shower, clean linens and to be evaluated by medical staff. Louie and Gann denied the aforementioned requests, stating that they first had to complete the reports regarding various incidents, among which the incident that led to the use of the grenade was included. Because Louie and Gann denied the above-mentioned requests, I did NOT receive a shower until 27 or 29 hours after the incident, and I was NOT given clean linens for almost 3 days. As a result, during that period, I continued to burn from exposure to the chemical agent, especially my eyes. Upon my placement in the Ad-Seg Unit, I also asked Sergeants WALTERS & JOSHUA BORDEWICK to give me a shower, clean linens and

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).

   _Physical pain (including to wrists, forearms, buttocks, eyes and hands), resulting mental anguish, fright & shock, as well as embarrassment, humiliation, and mortification._

5. Administrative Remedies.
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim II? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _N/A_

4

Paragraph 10

1  cleaning supplies, So that I could immediately proceed to
2  decontaminate my cell, ~~wwwww~~ for upon placement
3  into the Ad-Neg Cell, the chemical agent had spread
4  to the unit, causing contamination. Said incident is NOT an
5  isolated event. On 2-21-21, I was quarantined on the basis I
6  had never tested positive for COVID-19, in a building with people who
7  were positive for vaid virus and housed in a cell that was
8  never properly decontaminated a/f housing inmates infected with
9  the novel coronavirus. Custody refused to issue me clean
10 linens or cleaning supplies to decontaminate the filthy
11 cell. I was denied my kosher meal on 2.21.21 in violation of
12 RLUIPA, denied any & all access to Mental Health Staff on
13 2.20 & 2.21, when enforced extraction occurred to said
14 quarantine-zone. During this quarantine, I was denied
15 medication without reason, deprived of confidential
16 clinical setting for mental health & medical
17 sessions /evaluation, exposed to life-threatening
18 infection, Custody used active trash cans to store
19 food-trays and within these vessels were biologically
20 hazardous materials and staff displayed deliberate
21 indifference to the foregoing, with sadistic
22 & malicious intent. Custody /staff refused to don
23 full PPE while inside of Medical CTQ buildings, refused
24 to wear N-95 masks, face shields, gowns & gloves
25 while issuing IISs for inmates who did likewise;
26 utter discrimination. Inmates died at this time
27 due to complications from the coronavirus while
28 in custody of this facility.

4A

## CLAIM III

1. State the constitutional or other federal civil right that was violated: <u>the federal Prison Rape Elimination</u>
<u>Act of 2003 (PREA) & the National PREA Standards</u>

2. Claim III. Identify the issue involved. Check only one. State additional issues in separate claims.

☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☐ Medical care
☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation
☐ Excessive force by an officer     ☒ Threat to safety     ☐ Other: _____

3. Supporting Facts. State as briefly as possible the FACTS supporting Claim III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Plaintiffs incorporate by reference the allegations in paragraphs 1-10 , inclusive. Paragraph 11:
I'm transgender; transgender people are at a higher risk of physical and sexual violence in CDCR compared to the general prison population, as detailed in a report entitled: "An End to Silence," and released by the American University Washington College of Law, whose project on addressing prison rape was supported by Grant No. 2010-RP-BX-K001, awarded by the Bureau of Justice Assistance, a component of the Office of Justice Programs, which also includes the Bureau of Justice Statistics. From 1-1-20 to the present, custodial, medical and so-called "free" staff at MCSP ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ liberally, consistently, repeatedly, aggressively, and persistently sexually abuse and harass me, with sadistic and malicious intent, on account of at least 3 factors: (1) the sexual abuse enacts retaliation against me for filing grievances against said staff, while deterring and/or chilling other victims from reporting systemic staff misconduct at this institution (MCSP); (2) the sexual abuse/harassment stems from deep-rooted animus toward homosexual people whose gender is transgender-female, particularly of Jewish faith and ▓▓▓▓▓▓▓▓▓▓, especially those people of the aforementioned class who are open as well as unapologetic of their membership within aforesaid class; (3) the sexual abuse causes me serious harm, given my documented history ▓▓▓▓ of ▓▓▓▓▓ childhood sexual abuse in conjunction with the inherent harm ▓▓▓▓▓▓▓▓ such abuse entails, and that the foregoing satisfies the sadism and ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ malice of the perpetrators, including: Sgt. B. LOUIE, c/o P. GANN, c/o J. KEENAN, c/o THOTH, c/o WOODALL, Sgt. WALTERS, c/o ZIRZOW and their partners.

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).
On-going neuropsychological damage, including PTSD, MDD, protracted clinical anxiety, nightmares, insomnia, severe asthmatic exacerbations, suicidal ideation, on-going traumatic dissocation reactions, chronic migraines, depression and exacerbated chronic care conditions relating to schizophrenia.

5. Administrative Remedies.
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Claim III?    ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level?    ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____ N/A _____

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

1  The following incidents of protracted staff sexual misconduct against me are demonstrative, NOT

2  exhaustive.  On 10-6-21, at noon or thereabout, Peace Officer J. KEENAN, a correctional employee at MCSP,

3  refused to use my correct female pronouns (a violation of DOM 54040.4.1), threatened my safety, and

4  sexually harassed me & failed to respond to acts and/or reports of sexual abuse. On above date, Dr. David

5  F. Ramos (Phys) Physician & Surgeon) and RN Samson ordered custody staff to wheelchair me to TTA as a

6  result of health complications arising from my-then active HUNGER STRIKE. J. KEENAN was assigned to wheel-

7  chair me back to the cell, at appointment's end. Exiting TTA alone with J. KEENAN, he proceeded to mis-

8  gender me , refused to give me his legal name (surname), no name-tag was to worn; & he threatened to

9  assault me ("Don't make me fuck you up where the sun don't shine," KEENAN stated to me. KEENAN proceeded

10 to laugh at his malicious & sadistic torment of me at a time of serious medical & mental health distress.

11 I explained the foregoing to KEENAN, including the fact that I'm a survivor of childhood sexual abuse

12 but he displayed continued the threats to my safety, of a graphically sexual nature.  Afraid for my safety

13 and suffering from severe dehydration as well as sustenance sustenance-deprivation in conjunction with

14 a significantly depressed blood surger sugar sugar sugar sugar count, I stopped to catch my breath &

15 expressed serious PREA-safety concerns (of J. KEENAN ) to a female member of staff in plain clothes

16 exiting TTA/CIC. She, consequently, rolled her eyes, giggled, refused to give me her name upon my repeated

17 polite request, failed to report PREA allegations to her supervisor, and let me alone with J. KEENAN.

18 Upon re-entering Facility B, J. KEENAN threatened to issue me a false and punitive/retaliatory RVR

19 (RULES VIOLATION REPORT), if a I filed a grievance concerning the aforementioned events. Inmate TIMOTHY

20 VASSAR (BL3324), a member of Yard Crew, witnessed KEENAN spew sexual & violent obscenities at me and that

21 I was consequently in a visible state of deep mental crisis.I reported the foregoing to Dr. Carlos Dreiss

22 during an emergency session and, concern concerned for my safety, he did immediately contact supervisory

23 staff, to ensure a a prompt inveestigation of J. KEENAN and ensure separation between he & I.

24 Furthermore, given then-clinical complexity of my pain and suffering, I repot reported the foregoing to

25 Dr. R. SHANDILYA (Psychiatrist), who then proceeded to modify my prescribed psychotropic medications

26 in the light of needless medical complications owing to J. KEENAN'S sexual terrorism.

27 During said events, I was tachycardic and borderline orthostatic, migraine, hypoactive, dizziness,

28 fatigued, depressed blood sugar, irregular hearbeat, significant weight loss, dehydrated dehydrated,

dysthymic, clinically anxious, severe-depressed, air-hungry, suffering episodic heartburn, in addition

to gastroesophageal reflux disease, hyperlipidemia, in conjunction with preventable exacerbations to

to post-traumatic stress disorder, all this at a time when multiple members of medical staffs advised

me that my life was "at risk of death" in light of then-current clinical context.  Witness VASSAR

was interviewed by the LDI upon Dr. Dreiss' report of J. KEENAN'S sexual misconduct against me and

my filing ~~Grievance # a grievance for  hi which I have yet to receive a notice containing the assigned~~

Witness VASSAR stated to me that, during the PREA-interview, he saw a large poster of me on the wall

in the 'B'-Program Office with black writing over my eyes stating: "TROUBLE MAKER".  Dr. Dreiss and

Psychologist M. LOWRY both documented the above retaliatory/~~terrorist~~ terroristic eyewitness account

as contributory to my most recent attempt to die by suicide for which I was ~~in-house~~ hospitalized via

Crisis Bed placement. VASSAR, under penalty of perjury, stated in  a written ~~decla~~ declaration that

he did see the above in person during the LDI-interview in B Program. Prior to the foregoing, on or

around 1-11-20, I experienced severe pain in my left lower abdomen. I ~~vomited ate~~ vomited bile,

~~previously consumed food content~~

~~pre~~ previously consumed food content, and the vomit also had blood in it. Upon a ~~sure zero~~ cursory

medical evaluation, staff told me to "tough it out until morning," and did not provide me with any

medication. Ultimately, I was taken ~~to~~ to TTA for another medical evaluation during which

D. WOODALL and L. THOTH, both correctional ~~at~~ staff, stated to me and medical ~~at~~ staff that I ~~/~~

"probably should have my prostate examined from getting fucked so many times," that I "probably got

too much cock, it's...her prost~~ate~~ate, Doc," "check out her tranny ass," and "the bitch is fakin' it

to get a fix, fuck her" etc. I refused to return to TTA for fear of ~~encountering encountering~~

seeing said officers again, reported the sexual harassment, intimidation and implied threats to

to Clinician JACQUES, filed Appeal: #MCSP-PREA-20-01-001 but said officers did not face any

disciplinary consequences from their sexual misconduct, as seems ~~appro~~ appropriate given their

widespread sexual abuse of Armstrong class members, which goes ~~unpunished unpu~~ unpunished for which

deep fear has grown in the disabled ~~LGBT~~ LGBTQ+ community at MCSP. I.S.U. Sgt. G. JUNES misrepresented

material facts during the investigation into WOODALL and THOTH, going so far as to falsify legal

legal documentation for which I did file Grievance #132411 and AIMS Log# N-AIMS-MCSP-1353-21.

## E.  REQUEST FOR RELIEF

State the relief you are seeking:

_WHEREFORE, Plaintiffs pray: 1. That the Court certify this action as a class action. 2. That the Court personally view the Mule Creek State Prison to gain assistance in rendering a ruling. 3. That the Court enter a judgment declaring that defendants, and each of them, through the individual and collective acts, practices, and omissions complained of herein, have subjected and are subjecting plaintiffs to: a. Summary punishment without due process of law in contravention of the Fifth & Fourteenth Amendments to the U.S. Constitution;_

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ _12 - 21 - 21_ _____
　　　　　　　　DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages.  If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

b.  Denial of equal protection of law in contravention of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution as enumerated in plaintiffs' Second Claim for Relief;

c.  Prejudice to fair trial in contravention of 42 U.S.C. §1983 and the Fifth, Sixth, Seventh and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Third Claim for Relief;

d.  Denial of access to counsel and the Courts in contravention of 42 U.S.C. §1983 and the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiff's Fourth Claim for Relief;

e.  Denial of Rights of Expression, Communication and Association in contravention of 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Fifth Claim for Relief;

f.  Denial of due process in disciplinary and classification proceedings in contravention of 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Sixth Claim for Relief;

g.  Cruel and unusual punishment in contravention of 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs's Seventh Claim for Relief;

h.  Denials of adequate medical care in contravention of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution as enumerated in plaintiffs' Eighth Claim

- 6A -

for Relief;

      i.  Violations of <u>California</u> <u>Penal</u> <u>Code</u> §§825, 4001

4003, 4012, 4015, 4016.5, 4019.5(e), 4023, 4027, 6029.1, 6031.1,

6031.1(c), <u>Business</u> <u>and</u> <u>Professions</u> <u>Code</u> §§2141, 2392 and 2726

<u>Health</u> <u>and</u> <u>Safety</u> <u>Code</u> §11222 as enumerated in plaintiffs'

~~Ninth~~ Claim for Relief;

    4.  That the Court issue preliminary and permanent

injunctions assuring that ~~pretried~~ prisoners are accorded all

of the rights and prviliges of the innocent; and that all

prisoners not be subjected to cruel and unusual punishment and

not denied their other constitutional and statutory rights.

More specifically, the plaintiffs should be assured by the plan,

<u>inter</u> <u>alia</u>:

    a.  That the prisoners be accorded essential pre-

ventive medical care and receive adequate and sound medical,

psychiatric and dental health care;

    b.  That prisoners addicted to controlled substances

be accorded with reasonable medical care to ease the symptoms

of withdrawl and not be housed with other non-addicted inmates

during their period of withdrawal.

    c.  That a regular recreational and exercise program,

outside of the cells, be expanded and scheduled and that all

prisoners be allowed outdoors for sufficient periods to insure

their continuous physical and mental well being;

    d.  That the ~~overcrowding~~ prisoners living areas

therein be kept in a safe and healthy condition, with proper

heating, ventilation and provisions for sanitation;

///

5. That the Court order CDCR to install video surveillance cameras and body-worn cameras, each with an audio-feed;

6. That the Court order CDCR to change the investigative and disciplinary processes at MCSP;

7. That the Court order the Defendants to draft and present to Plaintiffs for their review a plan, to wit: a new remedial plan, for achieving compliance with the Armstrong Remedial Plan (ARP), the Americans with Disabilities Act (ADA), and the Prison Rape Elimination Act (PREA) that includes the components described below. To the extent possible, Defendants shall provide to Plaintiffs drafts of the components that must be included in the MCSP Remedial plan on a rolling basis prior to twenty-one days of the date this Order is granted;

8. Plaintiffs shall provide comments to Defendants as to the drafts within seven days of receiving them.

9. The parties shall meet and confer promptly to resolve any disagreements as to the adequacy of the MCSP Remedial plan or any of its components. Defendants shall ensure that staff with sufficient authority to amend and approve any plans, policies and procedures in the MCSP Remedial Plan attend all meet-and-confer sessions.

10. In the event that a disagreement is not resolved within forty-two days of the date this Order is granted, plaintiffs shall file objections with the Court no later than forty-nine days of the date this Order is granted in a brief of no more than ten pages; Defendants may respond to the objections within seven days thereafter in a brief of no more

6C

than fifteen pages; and Plaintiffs may file a reply of no more than five pages within four days thereafter.

11. Within fourteen days of reaching agreement with Plaintiffs, or receiving this Court's order resolving any disagreements, Defendants shall issue the MCSP Remedial Plan in final form and implement its provisions pursuant to the terms described below, unless the MCSP Remedial Plan sets a different date for the implementation of a component of the MCSP Remedial Plan. a. Cameras. Within ninety days of the finalization of the MCSP Remedial Plan, CDCR shall install operational surveillance cameras that cover all areas of MCSP to which class members have access, including, but not limited to, all exercise yards, housing units, sally-ports, dining halls, program areas, and gyms. Within sixty days of the finalization of the MCSP Remedial Plan, CDCR must begin using body-worn cameras for all correctional officers at MCSP who may have any interaction with class members. The MCSP Remedial Plan shall describe the steps that Defendants will take to achieve these deadlines. b. The MCSP Remedial Plan must contain policies and procedures regarding the use of body-worn cameras and the use of camera footage at MCSP from any type of camera, including requirements that all footage be retained for a minimum of ninety days, that footage of use of force and other triggering events involving class members at MCSP be retained indefinitely, that footage, when available, be reviewed and considered as part of the investigation of any incident, and that the foregoing conform to the RJD Remedial Plan developed in the RJD

60

Remedial plan. The MCSP remedial plan also must contain policies and procedures for training MCSP staff regarding how and when to use a body-worn camera and how to ensure that footage is retained and reviewed. c. Reforms to staff complaint, investigation, and discipline process at MCSP. CDCR must develop measures to reform the staff complaint, investigation, and discipline process, which shall be included in the MCSP remedial plan, to ensure (1) that CDCR completes unbiased, comprehensive investigations into all allegations of staff misconduct violative of the rights of any class member under the MCSP or the ADA or PREA; (2) that CDCR mandates the use of cameras to photograph any and all injuries any class member sustains as a result of staff members misconduct; (3) that CDCR imposes appropriate and consistent discipline against employees who engage in violations of the MCSP-RP or ADA or PREA with respect to class members at MCSP; and (4) that employees who engage in criminal misconduct against class members at MCSP in violation of the MCSP-RP or ADA or PREA are appropriately investigated and, if warranted, referred for prosecution. 12. That the court order Third-Party Monitoring of Defendants' execution of the MCSP-RP, and that the court delegates to Edward Swanson, it's court expert, pursuant to Federal Rule of Evidence 706, the duties of monitoring defendants' execution of MCSP-RP. 13. That the court order CDCR to dismiss Plaintiffs 's rules and restore her credits. 14. Award plaintiffs monetary damages, compensatory and punitive in an amount to be determined at trial and 15. Grant plaintiffs such other and further relief as the court deems just and proper.

6 E