UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKIVA AVIKAIDA ISRAEL, | No. 2:22-cv-00005 DB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| GAVIN C. NEWSOME, et al., | |
| Defendants. | (ECF Nos. 2, 3, 5, 6) |

Plaintiff Akiva Avikaida Israel,[1] a state prisoner, proceeds without counsel under 42 U.S.C. § 1983. This matter was referred to the undersigned by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Plaintiff's complaint (ECF No. 1) is before the court for screening. Plaintiff has also filed a motion seeking preliminary injunctive relief. (ECF No. 3.)

As set forth below, the undersigned will recommend the motion for preliminary injunctive relief be denied. However, plaintiff's complaint states cognizable claims under the Eighth Amendment against Officer B. Louie and Sgt. Walters. Plaintiff also states a cognizable retaliation claim under the First Amendment against Officer J. Padilla. Plaintiff may either proceed on these claims or file an amended complaint.

---

[1] Plaintiff is transgender and identifies as female; thus, the court will use the pronouns "she" and "her."

1

### I. In Forma Pauperis

Plaintiff filed two motions to proceed in forma pauperis. (ECF Nos. 2, 5.) Plaintiff's initial motion to proceed in forma pauperis makes the showing required by 28 U.S.C. § 1915(a). Thus, the initial motion will be granted and the subsequent motion will be denied as moot.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By separate order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). The order will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of 20% of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

### II. Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim that shows the pleader is entitled to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In order to state a cognizable claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations

1 sufficient "to raise a right to relief above the speculative level." Id., 550 U.S. at 555. The facts
2 alleged must "'give the defendant fair notice of what the... claim is and the grounds upon which it
3 rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555). In
4 reviewing a complaint under this standard, the court accepts as true the allegations of the
5 complaint and construes the pleading in the light most favorable to the plaintiff. See id.; Scheuer
6 v. Rhodes, 416 U.S. 232, 236 (1974).

   **III.     Allegations in the Complaint**

Plaintiff is incarcerated at Mule Creek State Prison ("MCSP") and seeks relief for violations of her constitutional rights that allegedly occurred at MCSP. (See generally, ECF No. 1.) Plaintiff's allegations can be fairly summarized as follows.

On April 30, 2021, plaintiff went to the Receiving and Release Department to retrieve a package. (ECF No. 1 at 5.) Officer J. Padilla stated "[since] you put in paperwork on my department, …I'm gonna keep some of your shit, Mister Israel." (Id.) Padilla referred to administrative grievance No. 28579 and small claims case No. 21SC3883. (Id.) Plaintiff told J. Padilla she would file a grievance for J. Padilla retaliating and stealing her property and asked J. Padilla to respect her pronouns and address her as "Miss Israel." (Id.) J. Padilla stated "Sign it, Mister Israel, or I'll donate the rest of your package," and further, "take what you got and leave, or I'll donate your ass." (Id.) J. Padilla kept some of plaintiff's property. (Id.)

On May 7, 2021, correctional officers deployed chemical agent expulsion grenades at an A-yard inmate. (ECF No. 1 at 12.) Subsequently, plaintiff was exposed to that inmate while in the Facility A Program Office, causing burning sensations, especially in plaintiff's eyes. (Id.) After this exposure, plaintiff asked Sgt. B. Louie and P. Gann for a shower, clean linens, and to be evaluated by medical staff. (Id.) Louie and Gann denied plaintiff's requests, stating they needed to complete reporting regarding various incidents, including the deployment of the chemical agents. (Id.)

Plaintiff was in the Program Office to be "interrogated" by Sgt. B. Louie and P. Gann because plaintiff had expressed safety concerns to another staff person. (ECF No. 1 at 6.) Plaintiff requested her hearing aids and asthma inhaler during the questioning but did not receive them and

3

1  was unable to communicate effectively without the hearing aids. (Id.) During the interview, B.
2  Louis and P. Gann both laughed at plaintiff and made harassing comments. (Id. at 6.) B. Louis
3  said "don't be a pussy[;] Answer my Questions" and "[y]ou fuck with Padilla, you fuck with me."
4  (Id.) Officer Gann stated to plaintiff "[y]ou like getting raped, Israel, so what's the problem." (Id.)

5      Plaintiff suffered a trauma dissociation reaction during which she "blacked out" and fell to
6  the floor but did not fully lose consciousness. (ECF No. 1 at 7.) B. Louie stated, "Wake that bitch
7  up," and ordered an unidentified correctional officer to kick plaintiff in the head. (Id. at 8.) B.
8  Louis then ordered plaintiff to administrative segregation. (Id. at 7.) Officially, the administrative
9  segregation placement was for non-disciplinary reasons, but plaintiff alleges in actuality, it was
10 for "retaliatory motives." (Id.)

11     Upon arriving at the administrative segregation unit, Sgt. Walters ordered unidentified
12 male correctional officers to "forcibly strip [plaintiff] and slam [her] onto the concrete ground
13 violently" even though plaintiff is a medically documented transgender female inmate and has
14 female custody-staff only search protocol. (ECF No 1 at 8.) Plaintiff was slammed onto the
15 concrete ground violently. (Id.) Sgt. Walters then ordered subordinate officers to throw plaintiff
16 into a cell "like garbage." (Id.) Plaintiff landed hard on her buttocks again and experienced
17 extraordinary pain. (Id.) Plaintiff was ordered to cuff up and complied without resistance but
18 Walters stated to an unidentified officer, "dangle him like a pig on a stick." (Id.) Plaintiff was
19 lifted and dangled in the air for a long period of time while staff laughed at her, taunted her, and
20 spewed hate speech. (Id. at 8, 10.) When Walters ordered "apply more force," plaintiff was
21 repeatedly dropped violently, lifted, and dropped again. (Id. at 9.) Plaintiff sustained serious
22 injuries to her buttocks from landing on the concrete. (Id. at 11.)

23     Upon arriving at the administrative segregation unit, plaintiff asked Sgt. Walters and Sgt.
24 J. Bordewick for a shower, clean linens, and cleaning supplies to decontaminate her person and
25 cell. (ECF No. 1 at 12-13.) Walters stated "[y]ou won't get shit from us" and walked away. (Id. at
26 10.) Plaintiff did not receive a shower until 27 or 29 hours after the incident and did not receive
27 clean linens for almost 3 days. (Id. at 12)
28 ////

Plaintiff alleges transgender people are at a much higher risk of physical and sexual violence in CDCR compared to the general population. (ECF No. 1 at 14.) Plaintiff alleges MCSP staff consistently and repeatedly sexually abuse and harass plaintiff and other transgender disabled inmates, particularly those of Jewish faith. (Id. at 11, 14.) These staff members also consistently retaliate when grievances are filed for their conduct and go unpunished. (Id. at 14.)

Plaintiff alleges she has 101 sworn declarations in her possession supporting her allegations of widespread sexual abuse and harassment of transgender people at MCSP. (ECF No. 1 at 10.) Plaintiff relates examples of two further specific incidents involving herself. On October 6, 2021, Officer J. Keenan refused to use plaintiff's female pronouns in violation of DOM 54040.4.1 and stated, "Don't make me fuck you up where the sun don't shine." (Id. at 15.) Keenen then threatened to issue plaintiff a Rules Violation Report ("RVR") if plaintiff filed a grievance concerning the incident. (Id.) In addition, on or around January 11, 2020, while plaintiff was at a medical evaluation, correctional staff D. Woodall and L. Thoth made comments as follows: plaintiff "probably should have [her] prostate examined from getting fucked so many times[;]" "probably got too much cock, it's her prostate, Doc[;]" "check out her tranny ass[;]" and "the bitch is fakin' it to get a fix, fuck her." (Id. at 16.) Plaintiff reported the conduct and there were no disciplinary consequences. (Id.)

**IV.     Discussion**

**A. Class Action**

Plaintiff's request to have this case certified as a class action must be denied. Plaintiff can represent only herself in this suit. See Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962); C.E. Pope Equity Trust v. U.S., 818 F.2d 696, 697 (9th Cir. 1987) (the privilege appear without counsel is personal to the litigant). "[A]n inmate does not have standing to sue on behalf of his fellow prisoners. Rather, the prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." Weaver v. Wilcox, 650 F.2d 22, 27 (3rd Cir. 1981) (citations omitted); see also Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("It is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.") (citation omitted). Accordingly, the court construes this action as an

1  individual civil rights suit brought by plaintiff alone. If plaintiff files an amended complaint, she
2  must do so only on her own behalf.

    **B. PREA**

    Plaintiff states she intends to bring a claim under the Prison Rape Elimination Act of 2003 ("PREA"). (ECF No. 1 at 14.) The PREA, at 42 U.S.C. § 15601 et seq., "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission." Porter v. Jennings, No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012) (citing collected cases). Pertinent here, nothing in the PREA indicates it created a private right of action that is enforceable under 42 U.S.C. § 1983 or otherwise. Id. Since the PREA itself contains no private right of action, there is no corresponding right enforceable under § 1983. See Graham v. Connor, 490 U.S. 386, 393-94 (1989) ("Section 1983… provides a method for vindicating federal rights conferred elsewhere."). Accordingly, plaintiff fails to a claim under the PREA.

    **C. Excessive Force under the Eighth Amendment**

    In order to establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); see also Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). The relevant factors may include (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7.

    Officers who are present at the scene, but do not personally deploy force, can be held liable for excessive force if they direct the use of force or fail to intercede. See Lolli v. County of Orange, 351 F.3d 410, 41 8 (9th Cir. 2003) (supervisors can be liable for ordering or acquiescing in a subordinate's use of excessive force). Plaintiff alleges B. Louie ordered an unidentified correctional officer to kick her in the head and Sgt. Walters ordered subordinate officers to lift her by the handcuffs and slam her onto the ground violently and repeatedly. Plaintiff states cognizable claims under the Eighth Amendment against Officer B. Louie and Sgt. Walters.

### D. Deliberate Indifference under the Eighth Amendment

An Eighth Amendment deliberate indifference claim based on a medical need has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976). A medical need is sufficiently serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). "Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and must make the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). In order to be actionable, the indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, or medical malpractice will not support this cause of action. See Estelle, 429 U.S. at 105-06); Whitley, 475 U.S. at 319; Toguchi, 391 F.3d at 1057; McGuckin, 974 F.2d at 1059.

The failure to decontaminate or otherwise assist a prisoner suffering from the painful effects of pepper spray may support a claim under the Eighth Amendment. Clement, 298 F.3d at 904. Here, plaintiff experienced burning, especially in her eyes, from proximity to another inmate on whom chemical agents had been used. Plaintiff requested a shower, clean linens, cleaning supplies, and/or medical evaluation from defendants B. Louie, P. Gann, Sgt. Walters, and Sgt. Bordewick, each of whom allegedly denied her requests. The court accepts as true for pleading purposes plaintiff's allegation that she experienced burning, especially in her eyes, from the described exposure. However, the complaint lacks factual allegations that any defendant knew plaintiff had a serious medical need to be medically evaluated or to decontaminate from exposure to chemical agents. Under the circumstances alleged, the mere denial of plaintiff's requests,

7

without more, falls short of stating a claim. See Id. ("officials… may have been deliberately indifferent to the prisoners' serious medical needs if… they were aware of the harmful effects of the pepper spray and of the inadequacy of their ventilation methods and yet purposefully refused to provide showers [or] medical care…").

### E. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)). It is the plaintiff's burden to prove each of these elements. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

For screening purposes, plaintiff states a cognizable retaliation claim against Officer J. Padilla, whom plaintiff alleges took plaintiff's property because plaintiff filed an administrative grievance and a small claims case against J. Padilla's department. Plaintiff does not state a claim against B. Louis, whom plaintiff alleges ordered plaintiff to administrative segregation for retaliatory motives; this broad assertion is conclusory and does not state a claim.

### E. Verbal Harassment

Allegations of verbal harassment or abuse alone do not suffice to state a claim under section 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("verbal harassment generally does not violate the Eighth Amendment"), amended on other grounds by 135 F.3d 1318 (9th Cir. 1998). Threats of bodily harm also do not generally rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (a "mere naked threat" from prison guards does not violate the Eighth Amendment). Accordingly, plaintiff does not state a claim against P. Gann, D. Woodall, or L. Thoth for taunting, threats, verbal abuse, or harassment.

////

////

**F. Preliminary Injunctive Relief**

Plaintiff has filed a motion for "emergency injunctive relief" seeking to be transferred from MCSP to Correctional Training Facility ("CTF") in Soledad, California, Facility A. (ECF No. 3 at 4.) Plaintiff is not entitled to the order she seeks as she has "no right to be housed in a particular institution." Phillips v. Ornoski, 673 F.3d 1168, 1171 (9th Cir. 2012), as amended on denial of reh'g and reh'g en banc (May 25, 2012). In addition, preliminary injunctive relief is currently unwarranted because the court is unable to determine plaintiff is likely to succeed on the merits or her claims or that she has demonstrated immediate threatened injury

A party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22. An injunction against individuals not parties to an action is strongly disfavored. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969); Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claims...."). In cases brought by prisoners involving conditions of confinement, any preliminary injunction must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

////

Here, plaintiff alleges she faces mortal danger at MCSP, having been assaulted by prison staff on or around May 7, 2021, as set forth in the complaint. (ECF No. 3 at 1.) Plaintiff alleges her attackers still have access to her at MCSP and that she is at increasing risk of further violent assault at MCSP. (Id. at 3.) However, a potential future harm is too speculative to warrant a preliminary injunction. See Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.") (emphasis in original)); O'Shea v. Littleton, 414 U.S. 488, 498 (1974) ("threat of injury... is too remote to satisfy the case-or-controversy requirement"). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects. Nor does speculation or subjective apprehension about future harm support standing." Mayfield v. United States, 599 F.3d 964, 970 (9th Cir. 2010) (internal quotation marks and citations omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citation omitted).

### G. Cognizable Claims and Leave to Amend

Plaintiff's complaint states the following cognizable claims: (1) claims under the Eighth Amendment against Officer B. Louie and Sgt. Walters for allegedly directing that excessive force be used, and (2) a retaliation claim under the First Amendment against Officer J. Padilla based on the conduct of taking plaintiff's property. No other claims are cognizable as pleaded. Plaintiff may file an amended complaint to the extent she believes in good faith she can plead additional cognizable claims by alleging additional facts. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff chooses to file an amended complaint, it should be brief, and must state what each named defendant did that led to the deprivation of constitutional rights. See Iqbal, 556 U.S. at 676-677.

Plaintiff is not required to file an amended complaint. If plaintiff is agreeable to proceeding only on the claims found herein to be cognizable, she may file a notice so informing

the court. The undersigned will then recommend the remaining claims be dismissed, and the court will direct service of process as to the cognizable claims.

Alternatively, plaintiff may notify the court she wishes to object to dismissal of claims and stand on her complaint as it is currently pleaded. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004). If plaintiff chooses this option, then the undersigned will issue findings and recommendations, after which plaintiff will be granted an opportunity to file objections, and a district judge will decide on which claims plaintiff may proceed.

Plaintiff should note this opportunity to amend is not for the purpose of adding new claims. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Instead, plaintiff should focus efforts on curing deficiencies of the claims already set forth.

An amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and must be "complete in itself without reference to the prior or superseded pleading," E.D. Cal. Local Rule 220. Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in any amended complaint, plaintiff must sufficiently allege each claim and the involvement of each defendant.

## V.     Order and Recommendation

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall assign a District Judge to this case.

2. Plaintiff's December 29, 2021 motion to proceed in forma pauperis (ECF No. 2) is GRANTED.

3. Plaintiff's January 25, 2022 motion to proceed in forma pauperis (ECF No. 5) is DENIED as moot.

4. Plaintiff's motion requesting the court to screen the complaint and rule on plaintiff's in forma pauperis status (ECF No. 6) is GRANTED.

5. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action as set forth by separate order.

6. The Clerk's Office shall send plaintiff a blank civil rights complaint form.

7. Within 30 days from the date of service of this order, plaintiff must:

      a. File an amended complaint curing the deficiencies identified by the court in this order, or

      b. Notify the court in writing that she does not wish to file an amended complaint and is willing to proceed only on the claims found to be cognizable in this order; or

      c. Notify the court in writing she wishes to stand on her complaint as written.

7. Failure to respond to this order will result in a recommendation that this action be dismissed for failure to obey a court order and failure to prosecute.

In addition, for the reasons set forth, IT IS HEREBY RECOMMENDED that plaintiff's motion for emergency injunctive relief (ECF No. 3) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 15, 2022

DLB7
isra0005.B.fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE